**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| TRACY E. KIRK, | ) | |
| | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiff | ) | |
| | ) | **FLSA COLLECTIVE ACTION** |
| | ) | **COMPLAINT UNDER** |
| | ) | **29 USC § 216(b)** |
| | ) | |
| vs. | ) | CASE NO. 4:16-CV-222 |
| | ) | |
| TENNECO AUTOMOTIVE | ) | |
| OPERATING COMPANY, INC., | ) | |
| | ) | |
| Defendant | ) | |

***PLAINTIFF'S CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES***

Comes now the Plaintiff, Tracy E. Kirk ("Kirk"), by counsel, and for his Class Action and FLSA Collective Action Complaint against the Defendant, Tenneco Automotive Operating Company, Inc. ("Tenneco"), alleges and says:

## *I. STATEMENT OF THE CASE*

Kirk brings this class and collective action lawsuit against Tenneco to address class-wide wage and hour violations committed by Tenneco against its hourly-paid employees. Kirk will serve as class representative for current and former employees of Tenneco who were victims of Tenneco's class-wide wage violations.

Specifically, Tenneco is and has been underpaying its employees' wages on a class-wide basis as a result of an illegal time card rounding practice. All hourly-paid Tenneco employees were similarly subjected to Tenneco's unlawful compensation scheme that required its hourly

paid production employees to perform significant work prior to the official scheduled start time of each shift and to perform significant work after the official scheduled end of each shift. Tenneco has not been paying its employees for this additional work time. Generally, Tenneco has been paying employees based upon officially scheduled shift hours rather than actual, recorded hours of work. Tenneco has accurate time records, but it ignores them. Instead, Tenneco has created a system whereby it simply assumes an employee clocked in and worked only from the moment he/she was scheduled to begin work and then clocked out and ceased working immediately upon the employee’s scheduled shift end time. This is particularly troublesome, because Tenneco requires employees to report to work and clock in before scheduled shift times in order to participate in a meeting with one or more supervisor that includes stretching exercises. Tenneco’s employee time records and wage records make clear the fact that Tenneco failed to pay its employees very substantial wages because it did not pay employees from the moment the employee actually clocked in and began work until the moment the employee clocked out and completed his last principal activity.

Tenneco made these adjustments and deprived its employees of pay for actual time worked despite the fact Tenneco’s own time records showed its employees were working more time than Tenneco was paying its employees. Tenneco has been using illegal time card rounding practices. All of Tenneco’s time card rounding practices were performed to Tenneco’s benefit and to the harm and detriment of Tenneco’s employees. Tenneco’s illegal time card rounding practices (non-neutral time card rounding) violate the FLSA and result in underpayment of overtime compensation. In the same way, Tenneco’s illegal time card rounding practices result in the underpayment of wages, creating class-wide violations of the Indiana Wage Payment

Statute, I.C. 22-2-5.

Kirk's class and collective action claims based upon Tenneco's illegal time card rounding practices are perfect for class treatment and will be easy to prove. All of Tenneco's wage violations will be shown on the face of its pay stubs to employees and Tenneco's own time cards.

## *I. FACTUAL ALLEGATIONS*

1. Kirk is a resident of the State of Indiana, and is domiciled in Charlestown, Clark County, Indiana.

2. Tenneco operates an automobile part manufacturing facility in Jeffersonville, Clark County, Indiana.

3. Kirk is a current employee of Tenneco. He was hired in the early Spring 2015 (believed to be late March 2015) to work as a team member (laborer).

4. Tenneco pays Kirk and his fellow team members wages on an hourly-paid basis. Kirk and his fellow team members are non-exempt for FLSA overtime purposes. Kirk and his fellow team members routinely work some overtime hours (hours in excess of forty) during some workweeks through the year.

5. Tenneco utilizes an electronic time clock that records the time each employee begins his work each shift and records the time an employee ends his work each shift. If Tenneco paid its employees' wages and overtime based upon these time clock punches, Tenneco would be in compliance with the FLSA and with Indiana wage statutes.

6. Tenneco does not pay its employees' wages and compensation based upon its own time clock records.

7. Importantly, Tenneco does not record its hourly-paid employees' work time in any other way. The only time records Tenneco has to base its payment of wages are the time records generated by the employee time clock punches.

8. At least at its Jeffersonville, Indiana facility, for a lengthy period of time, Tenneco has employed a practice whereby it significantly adjusts downward and deducts time from its hourly-paid employees' time records and pays its employees for less than their full time worked.

9. Based upon its long-standing practice of manipulating and downwardly adjusting employee time records, Tenneco has been systematically underpaying its employees significant sums of wages and overtime on a daily basis. Many employees, including Kirk, have been underpaid wages and overtime compensation by up to thirty (30) minutes per shift.

10. Each Tenneco team member begins his/her shift by swiping a badge to record his/her time in. Generally, each employee must report to work and clock in (swipe a badge) up to fifteen minutes prior to his/her scheduled start time in order to participate in a shift meeting with a supervisor, stretch, receive work instructions for the day, and to assist and relieve the coworker on the earlier shift who had been performing the same tasks. At the end of a work shift, that same employee must assist the next coworker relieving him/her and, generally, work activity continues to occur after the employee's scheduled shift end time. The employee then clocks out after this transition is completed. Again, if Tenneco paid employees based upon actual time clock entries, Tenneco would be in compliance with the law. It does not and, instead, rounds time off the employee time records (to Tenneco's advantage and to each employee's detriment) and does not pay for significant daily amounts of actual work time.

11. Pursuant to its systematic, class-wide practice, Tenneco is not compensating its hourly-paid employees for all work time at the beginning of each employee's shift from the time the employee swipes his/her badge in. Additionally, pursuant to its practice, Tenneco systematically deducts time from its employee time records that represents time spent working by the employee after the scheduled shift end-time, even though the work was performed and recorded on Tenneco's time keeping system.

12. All of Tenneco's time rounding practices were performed to Tenneco's advantage and to the detriment and harm of Tenneco's employees. Tenneco's time card rounding practices are not neutral.

13. Tenneco intentionally and knowingly violated its employees' rights to earned wages through Tenneco's illegal time card rounding practices.

14. To provide more detail, when an employee clocks in at the beginning of a work shift, the employee's time punch is rounded **up** to the scheduled shift start time. For example, if an employee is scheduled to begin work at 6:30 a.m., but clocks in at 6:15 a.m., the employee's time record is rounded **up** to treat the employee as though she clocked in at 6:30 a.m. This is true even though the employee is working prior to this scheduled shift time. When an employee clocks out at the end of her work shift, that employee's time is rounded **down** to the scheduled shift end time. For example, if the employee is scheduled to finish work at 2:30 p.m., but actually clocks out at 2:45 p.m., that employee's time record is rounded **down** to treat the employee as though she clocked out at 2:30 p.m. Again, this is true even though the employee is working after the scheduled shift end time and works up until she clocks out.

15. Systematically, Tenneco rounds time off both ends of its employees' work shifts

to benefit Tenneco and to harm employees. Tenneco underpays wages to its employees by its use of this rounding system. If employees were paid wages on a continuous work day basis - paid from actual time punch in to actual time punch out - employees would be paid more wages and more overtime.

16. During many calendar weeks in 2015 and in 2016, Kirk worked in excess of forty hours and was owed additional overtime compensation based upon Tenneco's unlawful time rounding. In every or virtually every work week, Kirk lost wages as a result of Tenneco's unlawful time rounding. The same is true about overtime and unpaid wages for all of Kirk's Jeffersonville, Indiana coworkers.

17. Tenneco has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Tenneco's illegal time card rounding practices. Tenneco has intentionally, knowingly, with reckless disregard and systematically violated Kirk and all similarly situated employees' rights to be paid earned wages and to be paid earned overtime compensation. Tenneco deliberately and intentionally implemented a time card rounding system in order to pay less in wages to its employees than it owed and less than was reported and earned by the employees.

18. Particularly because Tenneco had (and still has) records of its employees' full time worked and simply chose to adjust and reduce the amount of time it paid its employees for work performed, it is clear that Tenneco knowingly and willingly failed and refused to pay Kirk and his fellow hourly-paid coworkers for all time worked.

19. Kirk and all similarly situated coworkers have been harmed by Tenneco's uniform policies and practices of reducing and adjusting time records downward and other types

of non-neutral time card rounding practices, all of which profited Tenneco and worked to the detriment and harm of Tenneco's employees. These illegal time record rounding decisions are clearly the product of a conscious policy decision made by Tenneco to manipulate its time records and to pay its employees for less than all time worked.

### *III. CLASS AND COLLECTIVE ACTION ALLEGATIONS*

20. Kirk incorporates herein by reference paragraphs 1 - 19 above.

21. Kirk is pursuing claims individually, but this Complaint is brought also as a collective action and as a class action on behalf of other current and former Tenneco employees who were similarly denied payment of wages and overtime compensation under Tenneco's compensation scheme that involved the manipulation of time records and the failure to pay wages for work at the beginning and the end of Tenneco's employees' shifts.

22. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Kirk and all Tenneco current and former employees who were damaged by Tenneco's compensation system which required and resulted in uncompensated work by Tenneco employees. By virtue of the "collective action," Kirk represents the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstance. Kirk anticipates that other Tenneco employees and former employees will opt in to the action.

23. With respect to FRCP 23(b)(3) class action claims, Kirk will serve as class representative over a proposed class. The class will be as follows:

> Kirk will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute. This Court has supplemental jurisdiction over Kirk's Indiana statutory wage claim. This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Kirk and on behalf of all eligible

> Tenneco current and former employees (who voluntarily resigned) who work or worked in Jeffersonville, Indiana and were damaged by Tenneco's compensation system which required and resulted in uncompensated work performed by hourly-paid employees. By virtue of the class action, Kirk represents the identical and/or similar interests of former and current coworkers denied wages under the same circumstances.

24. The number of Tenneco's current and former employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical. Instead, Kirk will pursue discovery to obtain the names of the other current and former Tenneco employees, to provide notice of the collective action, and to offer the opt in opportunity, and to provide notice of the class action and to offer the opt out opportunity.

25. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

26. Kirk's claims are typical of the claims of the whole collective group of current and former Tenneco hourly-paid employees harmed by Tenneco's illegal wage practices. Kirk's claims are typical of the claims of the whole class of current and former Tenneco hourly-paid employees harmed by Tenneco's illegal wage practices.

27. Kirk will act to fairly and adequately protect the interests of the entire collective group of current and former Tenneco employees. Kirk will act to fairly and adequately protect the interests of the entire class of current and former Tenneco employees.

28. A "combined"[1] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Tenneco. For example, to prove Tenneco's illegal wage practices, Kirk and other members of this collective group/class would seek in discovery records about all similarly situated current and former Tenneco

---

[1]See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

employees who were similarly denied earned wages and overtime compensation under Tenneco's compensation system which required and resulted in uncompensated work through illegal and non-neutral time record rounding practices, all of which harmed hourly-paid employees. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

29. A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA and Indiana statutory and contractual wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

30. A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

31. Because Tenneco's compensation system which required and resulted in uncompensated work by hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law issues predominate.

## *IV. JURISDICTION AND VENUE*

32. This Court has jurisdiction over Kirk's FLSA claims under 28 USC § 1331 as those FLSA claims raise a question of federal law. See 29 USC § 201 et seq. The Court has supplemental jurisdiction over Kirk's Indiana law claims, which have a common basis in fact with their own and the other Plaintiff class members' FLSA claims.

33. This Court is the appropriate venue for this cause of action as Kirk works for Tenneco at its Jeffersonville, Clark County, Indiana facility and most of the illegal activity took place in the Southern District of Indiana. 28 USC § 1367.

## *V. STATEMENT OF CLAIMS*

### *A. FAIR LABOR STANDARDS ACT CLAIMS*

34. Kirk incorporates herein by reference paragraphs 1 through 33 above.

35. Tenneco is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA. Tenneco is an "employer," as that term is defined by the FLSA.

36. Tenneco has violated Kirk's rights and the rights of all members of the Plaintiff Class to be properly paid overtime wages in a manner required by the FLSA. Tenneco has committed overtime violations by failing to pay Kirk and his similarly situated coworkers for all hours of work, particularly as Tenneco has underpaid wages based upon its illegal and non-neutral time record rounding scheme.

37. Tenneco has repeatedly violated the FLSA's overtime provisions by not paying Kirk and members of the Plaintiff Class at the required overtime compensation rate for all hours worked over 40 in a work week.

38. Tenneco's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Tenneco to a three year statute of limitations.

39. Kirk and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Tenneco's violations of their rights under the Fair Labor Standards Act.

### *B. Indiana Wage Payment Statute Claims*

40. Kirk incorporates herein by reference paragraphs 1 through 39 above.

41. Kirk has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and he is the Plaintiff who represents the same or similar interests of all current Tenneco hourly-paid employees and all of Tenneco's former hourly-paid employees who voluntarily resigned from employment.

42. By way of this Claim, Kirk is seeking, individually and on behalf of members of the Plaintiff Class of current and former Tenneco employees (who voluntarily resigned from employment), all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Kirk and his fellow Plaintiff Class members may be entitled pursuant to law. Pursuant to I.C. 22-2-5-2, Kirk is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses. Kirk further expressly asserts and alleges that Tenneco acted in bad

faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith," when it intentionally created a time card rounding scheme that systematically skimmed time and wages from its employees and resulted in underpaid wages on a class-wide basis.

## *VI. PRAYER FOR RELIEF*

WHEREFORE, Kirk respectfully requests that the Court enter judgment against Tenneco, and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;
2. All unpaid or underpaid wages;
3. All statutory damages under I.C. 22-2-5-2, including, but not limited to, all treble damages, costs, and statutorily authorized damages;
4. All reasonable attorney's fees and expenses;
5. Costs;
6. Prejudgment interest, if available; and
7. Any and all other relief just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84

100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net